**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

JANATASHI K. CHARLES,

Plaintiff,

v.

JOHN CHANDLER,

Defendant.

Civil Action
File No. _____

Jury Trial Demanded

## COMPLAINT

On October 23, 2024, Officer John Chandler unlawfully arrested Janatashi Charles – not for obstructing his investigation, but for criticizing the way he treated her. Officer Chandler used the power to arrest to punish speech protected by the First Amendment.

Ms. Charles was rushing to the hospital: her teenage son had been hurt at football practice and was in an ambulance, and her four-year-old daughter was in the car with her. When Officer Chandler stopped her for a stop-sign violation, she explained the emergency and asked to go. He refused, ordered her back into her car, and told her to "keep your mouth shut."

Ms. Charles complied. She handed over her license and sat where he told her to sit. With her license in hand and nothing left to do but run it, Officer Chandler

1

turned back instead and warned her: "If you don't keep your mouth shut, I'm going to take you to jail and I'm gonna call DFCS for your child." When she kept talking on the phone, he pulled her from the car, handcuffed her, and arrested her for obstruction.

Police officers may enforce traffic laws. They may not use jail to punish protected speech. Ms. Charles brings this action against Officer Chandler for First Amendment retaliation.

### Parties, Jurisdiction, and Venue

1. Plaintiff Janatashi K. Charles is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

2. Defendant John Chandler is an individual who was, at all times relevant to the allegations in this Complaint, an employee of the City of White Police Department, acting under color of law. Officer Chandler is sued in his individual capacity.

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First Amendment to the United States Constitution.

4. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343, as the action arises under the Constitution and laws of the United States.

2

5.  All the parties herein are subject to the personal jurisdiction of this Court.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in White, Georgia, in Bartow County, which is situated within the Rome Division of the Northern District of Georgia.

**Facts**

7.  At 6:47 p.m. on October 23, 2024, Ms. Charles was driving to Children's Healthcare of Atlanta, which was nearly an hour and a half away.

8.  Ms. Charles, who is herself a licensed nurse, was rushing to the hospital because she had just received a call that her son, a sophomore on the high school football team, had been injured at practice and was in an ambulance.

9.  Ms. Charles's four-year-old daughter was in the vehicle with her. Ms. Charles's daughter is autistic and largely nonverbal.

10. Officer Chandler pulled Ms. Charles over at the intersection of Richards Road and Old Tennessee Highway in White, Georgia, for failing to come to a complete stop at a stop sign.

11. Ms. Charles pulled over and, when Officer Chandler did not immediately exit his cruiser, she got out of her vehicle and walked to his window to explain the emergency.

12. Ms. Charles pleaded with the officer, stating, "My kid is being transported to a hospital. He's like an hour and a half away. I got to go to Egleston. Can I please go?"

13. Officer Chandler told Ms. Charles she "can't run a stop sign" and ordered her to "have a seat" in her vehicle.

14. Ms. Charles was visibly distressed. She told Officer Chandler that she did not have time for the stop and offered to let him follow her to the hospital.

15. Officer Chandler became frustrated, threatened to take her to jail, and told her to "have a seat and keep your mouth shut."

16. Ms. Charles returned to her vehicle and called a friend to say she would be delayed.

17. When Officer Chandler walked to Ms. Charles's vehicle, she was on the phone explaining to her friend that she had been stopped and was being delayed while trying to get to the hospital.

18. Officer Chandler told Ms. Charles to get her driver's license. Ms. Charles complied and retrieved her license while still on the phone.

19. Ms. Charles continued to complain about the stop while retrieving her license, saying in substance that Officer Chandler was acting like she had killed someone.

4

20. Ms. Charles handed Officer Chandler her license.

21. Officer Chandler then told Ms. Charles to get into her vehicle. Ms. Charles complied. She got into the vehicle and closed the door.

22. At that point, Officer Chandler had Ms. Charles's license and everything he needed to continue the traffic stop.

23. Officer Chandler turned away from Ms. Charles and began walking back toward his patrol car to run her information.

24. Ms. Charles remained in her vehicle, on the phone, upset that she was being kept from the hospital while her son was in an ambulance.

25. Ms. Charles did not refuse to identify herself, withhold her license, or prevent Officer Chandler from returning to his patrol car. She did not block his movement, conceal evidence, threaten him, or interfere with any investigation.

26. Instead of continuing to his patrol car to run her license, Officer Chandler turned back and threatened Ms. Charles for continuing to talk.

27. Officer Chandler told Ms. Charles: "If you don't keep your mouth shut, I'm going to take you to jail and I'm gonna call DFCS for your child."

28. Ms. Charles did not keep her mouth shut. Still seated in her vehicle, she complained to her friend that officers were threatening to take her to jail while her child was being transported to the hospital.

29. Officer Chandler then opened Ms. Charles's vehicle door and ordered her out of the vehicle.

30. As Ms. Charles began to get out, Officer Chandler grabbed her by the arm.

31. Ms. Charles cried out, "Don't put your hand on me. Stop touching me. What are you doing? He's touching me. Help me. Help. Help. Help."

32. Officer Chandler took Ms. Charles to the ground, handcuffed her, and arrested her for misdemeanor obstruction.

33. Ms. Charles's four-year-old daughter, who had witnessed her mother being grabbed, taken to the ground, handcuffed, and taken away, had to be taken home by family friends (who had been called in) rather than leave with her mother.

34. Ms. Charles was transported to the Bartow County Jail.

35. Ms. Charles was not allowed a phone call to check on her hospitalized son for several hours.

36. Ms. Charles was finally released at approximately 1:00 a.m. She drove immediately to the hospital to be with her son.

6

37. After the arrest, Officer Chandler prepared an incident report.

38. In his incident report, Officer Chandler described Ms. Charles as "hysterical," wrote that she was speaking loudly on the phone and that people were coming outside, and stated that, "[b]ased on Ms. Charles' behavior collectively," he placed her under arrest.

39. The report does not identify any physical obstruction. It does not say Ms. Charles concealed evidence, lied about her identity, misled Chandler about a suspect, threatened anyone, or blocked him from running her license.

40. When he was walking back to his car, Officer Chandler's stated purpose was to run Ms. Charles's license. Ms. Charles's criticism did not prevent or hinder him from doing so.

41. Ms. Charles's words did not obstruct Officer Chandler. Her criticism offended him.

42. On January 17, 2025, the City of White Municipal Court nolle prossed the obstruction charge. The stop-sign charge was reduced to a charge of "too fast for conditions," and Ms. Charles paid a fine before leaving court.

43. As a result of the arrest, Ms. Charles had to hire a criminal defense lawyer to defend charges that should never have been brought.

44. Ms. Charles also had to report the arrest to the Georgia State Board of Nursing, which resulted in a Letter of Concern in her nursing record.

45. Ms. Charles suffered severe emotional distress, anxiety, humiliation, and fear as a result of the arrest.

46. Ms. Charles also suffered the ongoing distress of seeing the effect the arrest had on her four-year-old daughter. In the months after the incident, her daughter cried when she had to separate from Ms. Charles, struggled at school drop-off, and began sleeping in Ms. Charles's bed.

### Count I 42 U.S.C. § 1983 First Amendment Retaliation

47. The preceding paragraphs are incorporated herein by reference as though fully set forth.

48. Ms. Charles engaged in speech protected by the First Amendment when she criticized Officer Chandler, complained about his treatment of her, and spoke to her friend on the phone about the traffic stop.

49. Ms. Charles's speech did not include fighting words, threats, or words that were likely to produce an immediate breach of the peace.

50. Officer Chandler took adverse action against Ms. Charles by opening her car door, grabbing her, taking her to the ground, handcuffing her, arresting her, transporting her to jail, and causing her to be criminally charged.

51. Ms. Charles's protected speech was the but-for cause of the arrest.

52. Before arresting Ms. Charles, Officer Chandler had her license, had ordered her to sit in her vehicle, and had begun walking back to his patrol car to run her information.

53. The only material event between Officer Chandler's decision to walk back to his patrol car and his decision to arrest Ms. Charles was Ms. Charles's continued protected speech.

54. Officer Chandler's own words confirmed the retaliatory connection. He told Ms. Charles that if she did not "keep your mouth shut," he would take her to jail and call DFCS for her child.

55. When Ms. Charles did not keep her mouth shut, Officer Chandler arrested her.

56. Officer Chandler lacked probable cause to arrest Ms. Charles for obstruction, disorderly conduct, or any other offense based on her speech.

57. Alternatively, even assuming Officer Chandler had arguable probable cause to arrest Ms. Charles for a traffic offense, Ms. Charles's First Amendment claim is not barred, because her custodial arrest was atypical.

58. Officers in the City of White, Georgia ordinarily issue warnings or citations, not custodial arrests, to motorists stopped for failing to stop at a stop sign or

for similar minor traffic offenses, particularly where the motorist provides a valid license and has no outstanding warrants.

59.58. Ms. Charles was arrested not because custodial arrest was the ordinary response to the alleged traffic offense, but because she continued criticizing Officer Chandler after he ordered her to "keep your mouth shut."

60. By arresting Ms. Charles in retaliation for her protected speech, Officer Chandler violated Ms. Charles's clearly established rights under the First Amendment.

61. As a direct and proximate result of Officer Chandler's unlawful conduct, Ms. Charles suffered loss of liberty, physical pain, humiliation, emotional distress, reputational harm, professional and licensure-related harm, and other damages to be proven at trial.

**Prayer For Relief**

WHEREFORE, Plaintiff prays that this Court issue the following relief:

1. That process issue in accordance with the law.

2. That the Court award Ms. Charles compensatory and general damages in an amount to be determined by the jury.

3. That the Court award Ms. Charles punitive damages in an amount to be determined by the jury.

4. That the Court award costs of this action, including attorneys' fees, to Ms. Charles, pursuant to 42 U.S.C. § 1988 and other applicable laws regarding such awards.

5. That the Court award Ms. Charles such other and further relief as it deems just and necessary.

6. That Ms. Charles be granted a trial by jury.

This 17th Day of June, 2026

**ESHMAN BEGNAUD, LLC**

/s/ Mark Begnaud
Mark Begnaud
Georgia Bar No. 217641
mbegnaud@eshmanbegnaud.com
Michael J. Eshman
Georgia Bar No. 365497
meshman@eshmanbegnaud.com

315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030
404.665.9601